Frances L. **PRATT, individually, and James Gardner Pratt, as Personal Representative of the Estate of John Henry Pratt, Plaintiffs,**

v.

**ROCKY MOUNTAIN NATURAL GAS COMPANY, INC., a Colorado corporation, and K N Energy, Inc., a Kansas corporation, Defendants–Appellants,**

**and**

**The Coleman Company, a Kansas corporation, Defendant–Appellee.**

No. 89CA0693.

Colorado Court of Appeals,
Div. V.

Aug. 30, 1990.

Rehearing Denied Sept. 27, 1990.

Certiorari Denied Feb. 25, 1991.

No Appearance for plaintiffs.

Hall & Evans, Alan Epstein, Michael Brice Sullivan, and Kristine K. Hughes, Denver, for defendants-appellants.

Downey & Douglas, P.C., Arthur H. Downey, Denver, for defendant-appellee.

Opinion by Judge CRISWELL.

Defendants, Rocky Mountain Natural Gas Co. and K N Energy, Inc., (collectively, Rocky Mountain) appeal from the judgment entered on a jury verdict denying their claim against defendant, The Coleman Co., for contribution under the Uniform Contribution Among Tortfeasors Act, § 13–50.5–101, et seq., C.R.S. (1987 Repl. Vol. 6A). Rocky Mountain claims that the trial court committed instructional error and that the jury was guilty of prejudicial misconduct. We affirm.

Rocky Mountain's claim for contribution against Coleman is grounded upon its settlement of a wrongful death claim that had been asserted against both Rocky Mountain and Coleman. The death occurred when the valve of a Coleman furnace, which had been installed in a mobile home, failed in the open position. The failure was caused by substantial quantities of oil and other liquids reaching the valve through the natural gas supplied to the unit by Rocky Mountain. Carbon monoxide fumes, resulting from an incomplete combustion of the air and natural gas in the furnace, escaped into the living quarters through a gap between the outside door of the furnace and the furnace's body.

Rocky Mountain's theory for asserting that Coleman was responsible, at least in part, for the resulting death was that Coleman was negligent in manufacturing and designing the furnace and in failing to give sufficient warning with respect to its operation. It also asserted that the furnace was defective, thereby rendering Coleman strictly liable.

In contrast, Coleman asserted, among other things, that the presence of the quantity of oil and other liquids found in Rocky Mountain's distribution system could not reasonably have been anticipated. Thus, it argued that Rocky Mountain was negligent in not taking reasonable steps to remove the impurities in the natural gas before it reached its customers' premises and that the presence of these impurities in the sys-

tem constituted a defect in the product, rendering Rocky Mountain strictly liable for the wrongful death.

By special verdicts the jury found that the Coleman furnace contained no defect, that Coleman was not negligent, and that none of its actions caused any damage. The trial court entered a judgment on these verdicts in Coleman's favor.

## I.

■ Rocky Mountain first argues that the trial court improperly instructed the jury that a manufacturer of a product is not legally responsible for injuries caused by the product if the product is used in a manner or for a purpose "which could not reasonably have been expected by the manufacturer" and if it was such use, rather than a defect in the product, that caused the injuries. In addition, Rocky Mountain appears to assert that Coleman's counsel improperly argued this issue before the jury. We disagree on both counts.

The evidence was undisputed that the furnace door in question had been owned and worked on by several different persons. The original gasket on the door had worn away; a new door had been installed on the unit some years before, but the hinge bracket on the door had been altered sometime previously. The evidence demonstrated that there was a gap between the replaced door and the body of the furnace, and the evidence would have permitted the inference that the altered hinge bracket had caused at least a portion of the gasket on the replaced door to wear away, thereby creating the fatal gap.

In addition, Coleman's expert testimony was that, while the presence of liquids in trace amounts in a natural gas distribution system might be anticipated, it was "never conceivable" that the "massive" amounts of foreign liquids found in Rocky Mountain's system would ever be encountered. In addition, there was evidence which, if believed, would have established that the valve on the Coleman furnace would not suffer any disfunction as the result of trace amounts of these liquids, but that it was not designed to operate when subject-ed to the amounts of liquids found in Rocky Mountain's system.

In requesting the court to instruct upon misuse of the furnace, Coleman's counsel referred to the condition of the furnace itself; in presenting Coleman's theory to the jury, however, he emphasized the amount of foreign liquids in the natural gas supply.

■ As the jury was instructed in this case, misuse of a product may result either from using it for a purpose not intended or using it in a manner that could not reasonably be anticipated. *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986). *See Patterson v. Magna American Corp.*, 754 P.2d 1385 (Colo.1988). And, the defense of misuse is related to the concept of causation. Thus, the defense requires the finder of fact to assess whether it was a defect in the product or its misuse that caused the loss involved. *Uptain v. Huntington Lab, Inc., supra.*

■ A manufacturer must design and market its product in light of the uses to which it reasonably may expect the user to put it. But, whether the particular use or the manner of use may reasonably be anticipated is a question of fact. *Uptain, supra.*

Here, it is reasonably arguable that neither an altered hinge bracket and an ill-fitting door on the furnace, nor its use in a natural gas system containing substantial amounts of foreign liquids, could reasonably have been anticipated by Coleman. Thus, Coleman was entitled to an instruction on misuse of the furnace in order to place its theory of the case fully before the jury. *See Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977).

Given this conclusion, it was not improper for counsel to argue that use of the furnace in a defective natural gas supply system could not have been anticipated and that it was this defective system, and not any defect in the furnace, that caused the injuries incurred here. Further, to the ex-

tent, if at all, that there is a claim that counsel's argument contained any other improprieties, that issue, not having been brought to the trial court's attention in any way, has not been preserved for review. *See Cruz v. Union Pacific R.R. Co.,* 707 P.2d 360 (Colo.App.1985).

## II.

▉ Rocky Mountain's claim of jury misconduct is based upon a post-trial affidavit of a juror indicating that, during their deliberations, the jurors placed a new Coleman furnace door, which had been placed into evidence as an exhibit, onto the furnace body, which was also an exhibit. Then, they placed a flashlight that they had obtained from the bailiff inside the fire box, closed the furnace door, and momentarily extinguished the lights in the jury room. The purpose of this experiment was to determine whether any light could be seen after the door's replacement. We conclude that such activity on the jurors' part was not improper.

There was testimony that there was a gap between the furnace door and the furnace body at the time of the decedent's death. Indeed, photographs were introduced as exhibits that clearly demonstrated that light from the burning natural gas could be seen through this gap.

In addition, there was testimony that, some time earlier, a previous owner had replaced an older door with a new door. That owner said that, after replacing the door, he could no longer see the flames through the gap.

Finally, several witnesses testified that there existed cracks in both the primary and secondary heat exchangers. They said that these cracks could be seen clearly by use of a flashlight.

▉ A jury cannot properly consider information from an outside source, not presented during the course of the trial. *See Ravin v. Gambrell,* 788 P.2d 817 (Colo. 1990); *Butters v. Dee Wann,* 147 Colo. 352, 363 P.2d 494 (1961).

However, a jury commits no impropriety in examining the physical evidence delivered to it in a manner suggested by the evidence. Indeed, unless the jury can inspect the physical evidence in some manner, it would be pointless to allow it to be taken to the jury room. *See George C. Christopher & Son, Inc. v. Kansas Paint & Color Co.,* 215 Kan. 185, 523 P.2d 709 (1974).

Hence, the relevant inquiry is whether the experiment or investigation made by the jury can be said to be within the scope or purview of the evidence introduced at trial. If so, the actions of the jurors are not improper. It is only if their activity is the equivalent of the reception of additional evidence that they may be said to have engaged in misconduct. *Taylor v. Reo Motors, Inc.,* 275 F.2d 699 (10th Cir.1960). *See People v. Staggs,* 740 P.2d 21 (Colo. App.1987) (it constitutes misconduct to drive an automobile between two locations to determine driving time, where no testimony respecting that subject was presented).

In applying this rule, courts have determined that jurors may use their own pocket knives, nail clippers, and other pocket tools to dismantle a heat exchanger from a motor vehicle in order to examine more closely the testimony of an expert who had disassembled the unit during his testimony. *Taylor v. Reo Motors, Inc., supra.*

We conclude that the jury's activities here fell within the scope or purview of the evidence. The testimony was that light from the flame could be seen through the gap caused by the original, ill-fitting door, but none could be seen after that door had been replaced with a new one. The jurors' attempt to evaluate this testimony by use of a flashlight did not, in our view, amount to the receipt of additional evidence; it was merely an experiment suggested by the evidence received during the course of this trial.

Judgment affirmed.

PLANK and VAN CISE *, JJ., concur.