2002-NMCA-006

38 P.3d 194

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Kristi LIHOSIT, Defendant–Appellant.**

**No. 21,996.**

Court of Appeals of New Mexico.

Nov. 29, 2001.

Certiorari Denied, No. 27,273, Jan. 15, 2002.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Appellee.

Todd Hotchkiss, Frechette & Associates, P.C., Albuquerque, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant appeals her conviction on 133 counts of embezzlement. Her sole issue on appeal is the propriety of the trial court's approval of the jury's request for a calculator for use during deliberations. She contends that the use of the calculator injected extraneous material into the jury's deliberations. We disagree. We conclude that the trial court properly allowed the jury to have access to a calculator in this case.

## BACKGROUND AND FACTS

{2} Defendant was employed in the office of Ballard Bus Company, a business which contracted with the schools in Carlsbad to transport students, both locally and out of town. Defendant was given authority to write and sign checks and make deposits for the company, along with the owners, Harley and Debby Ballard. In 1994 Defendant assumed responsibility for keeping the check registry and giving money to the drivers for out-of-town trips. Defendant also kept the trip logs. Sometime in 1999 Defendant left the company to care for her sick father. Shortly thereafter, Mr. Ballard discovered that the company had a zero balance in its checking account and was bouncing checks.

{3} Mr. Ballard testified that he visited Defendant in order to discuss the money situation, and that she admitted taking money from the company for "a very, very long time." A Carlsbad police detective investigated the matter. In so doing, he collected all the original checks, check registers, check stubs, and trip documents from the company. He also collected financial information, including deposit slips, from Defendant. With this information he constructed several spread sheets. Those spread sheets document the instances where Defendant wrote a check, indicating that it was for an owner's withdrawal, but where that amount of money was deposited in her own checking account; where she wrote checks for trips that were either never taken or for which reimbursement was much less than the check; where she wrote checks for cash and then deposited the money in her own account; and where she made deposits for the company less cash received by her. Evidence was also presented that Defendant wrote her own payroll checks and that she paid herself $1000 every two weeks. Mr. Ballard testified that her salary was supposed to be $1300 per month.

{4} Defendant was charged with 148 counts of embezzlement, some for amounts between $100 and $250, and some for amounts between $250 and $2500. Through the testimony of the detective, the State presented evidence showing the manner of Defendant's embezzlement. Defendant wrote checks for money for out-of-town trips, but

only part of the money was given to the drivers and the rest was deposited in Defendant's checking account. She made deposits for the company less cash for herself. She wrote checks for cash and deposited the money in her own account. For each count of embezzlement, evidence was presented in the form of the check written by Defendant. In the instances of the bus trips, the amount of the check was compared with the trip logs. In many instances, evidence was also presented of a deposit made into Defendant's checking account, either on the same day or the one following the check writing. Each count related to a particular check written by Defendant on a particular day. On many of the charges, in order to determine the amount embezzled, mathematical calculations were required to be made.

{5} Shortly after the jury began its deliberations, it requested a calculator from the court. Defendant objected on the basis that the jury should be able to come to its decision based on the evidence presented and that any outside help would necessarily contaminate that process. Defendant recognized that an adding machine does nothing but add, but argued that that could be done by hand. The State responded that the calculator would not give the jury any additional information, but would simply assist the jury in organizing it. The State pointed out that courts have traditionally provided paper and markers to a jury to assist it in organizing the evidence. The trial court allowed the calculator, stating that he believed that with the number of figures and counts of embezzlement involved, it was a "courtesy to the jury."

{6} Defendant was convicted of 133 of the 148 counts presented. She appeals arguing only that the jury should not have been allowed to have a calculator during its deliberations.

**DISCUSSION**

■ {7} This is not a case involving juror misconduct. Thus we do not review the case under the standards set forth in *State v. Mann*, 2000–NMCA–088, 129 N.M. 600, 11 P.3d 564. Instead, we review the trial court's determination upon the jury request for an abuse of discretion. *See State v.*

*Valles*, 83 N.M. 541, 543, 494 P.2d 619, 621 (Ct.App.1972) (holding that the trial court is given discretion in handling requests from the jury); *see also Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 20 Kan.App.2d 728, 894 P.2d 881, 897 (1995) (holding that allowing jury to use calculator is within the discretion of the trial). " 'We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason.' " *State v. Apodaca*, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (quoting *State v. Litteral*, 110 N.M. 138, 141, 793 P.2d 268, 271 (1990)).

■ {8} Here, we cannot say under the facts and circumstances of this case, which involved 148 counts of embezzlement supported by a number of pieces of evidence and a variety of numbers relating to each count, that it was an abuse of discretion to allow the jury to have a calculator for use during its deliberations. A calculator is nothing more than a machine used to do mathematical calculations quickly and accurately. As early as 1963, the Tenth Circuit allowed the jury the use of an adding machine during its deliberations. *Imperial Meat Co. v. United States*, 316 F.2d 435 (10th Cir.1963). In so doing, the court stated that it was "only a machine which accomplished the same result that the jury would have with pens and pencils which it can be safely assumed they had in their possession." *Id.* at 439. We believe the same holds true for a calculator. It was not a device that allowed the jury to perform tests or experiments or create evidence that was not already before them. It was nothing more than a modern substitute for pencil and paper, making calculations from the numbers input.

■ {9} Contrary to Defendant's argument, the jury was not creating evidence by its use of the calculator. Rather, it was taking the evidence, the numbers presented by the State, and testing it to see if the State had proved the amount charged. There is no suggestion that anything other than numbers taken from the evidence presented were used by the jury. Defendant appears to be arguing that it was the State's burden to present the final calculations to the jury. We dis-

agree. The State's burden was to present evidence that Defendant had taken money that did not belong to her in an amount either over $250 or under $250 for each count. There is no suggestion in the record that the State did not present such evidence. As we pointed out above, for each count, the State presented the check written and the evidence showing that either all or a part of it ended up in Defendant's possession. It was for the jury to determine whether the evidence established the Defendant had taken the amount alleged in the State's charge. That is not the creation of additional evidence.

{10} Further, the jury may organize and analyze the evidence presented in any way it wants to. *See State v. Chamberlain,* 112 N.M. 723, 732–33, 819 P.2d 673, 682–83 (1991). This includes testing the calculations made by the State in order to confirm that Defendant took the amount of money alleged in the charges. Defendant acknowledged below that the jury could properly do such calculations by hand, with pencil and paper. We see no reason why the same calculations could not be done with a calculator, which would do the same faster and more accurately. We are unpersuaded by Defendant's argument that calculations done by hand are done by the jurors and calculations with the use of the calculator are done by the calculator. The calculator depends on the input of the numbers by the jurors. We see no difference in calculations done by hand with pencil and paper, and calculations done with the use of a calculator, except that the calculator makes the job easier and the result more accurate. *Cf. State v. Robinson,* 79 Hawai'i 468, 903 P.2d 1289, 1293 (1995) (allowing videotape of defendant's voluntary confession as merely a modern substitute for a written statement finding it accomplished the same purpose, but more expeditiously and more correctly).

{11} Defendant also argues that the calculator was "extrinsic" to the jury deliberations, that it was evidence considered by the jury that had not been presented at trial. We do not believe that the calculator itself was evidence that was considered by the jury. It did not by its mere presence have an extraneous influence on the jury's deliberations. Defendant posits that the calculator interjected mathematical formulae that were never presented as evidence. There is no indication in the record, however, that such was the case. Rather, it appears that the jury simply used the calculator to do arithmetic functions, which all acknowledge could have been done by hand.

{12} Defendant relies on a case from Hawaii to support her claim that the use of calculator was error here. In *State v. Pichay,* 72 Haw. 475, 823 P.2d 152 (1992), defendant was charged with joy riding and two firearm offenses. On the second day of jury deliberations, the jury requested permission to use two dolls and a calculator, which one of the jurors had brought into the jury room. The judge allowed it over the objections of the defendant and the state. However, there was never a determination regarding whether and how the dolls and calculator were used. The Hawaii Supreme Court reversed for a new trial on the State's concession of error and the failure of the trial court to inquire into the jury's use of the objects to determine whether the defendant was prejudiced by their use.

{13} The present case is both factually and procedurally different than the Hawaii case. While there was no apparent reason for the use of the calculator in *Pichay,* the reason for the jury's request here is readily apparent. Further, in *Pichay* it is possible that the dolls were the real problem as they could have been used in some manner to reenact the crime. Further, the jury in *Pichay* had already taken the dolls and the calculator into the room before requesting permission. Both the defendant and the state objected. Here, the jury requested permission before getting use of the calculator. We do not find *Pichay* persuasive here as there is little similarity between the cases.

{14} Defendant also relies on *State v. Thacker,* 95 Nev. 500, 596 P.2d 508 (1979), a cattle rustling case where the defense was that the calves confiscated from defendants were not the stolen calves, as they were larger than the ones reported stolen. One of the jurors was the foreman on the ranch where the confiscated calves were impound-

**430**

ed. Drawing on his own knowledge of cattle and feed, the juror computed an estimate of what he thought the calves weighed at the time that they were impounded and gave that information to the other jurors. Because no evidence had been presented at the trial concerning the weight of the animals or what they had been fed during the impoundment, the appellate court determined that reversal was required because additional evidence was presented to the jury during deliberations, evidence that influenced the jury's verdict.

{15} Thus, *Thacker* is a jury misconduct case like *Mann* and not like this case at all. In both those cases, a juror, using his expert knowledge, performed calculations and discussed the results of those calculations with the other jurors. In *Thacker*, the calculations were based on evidence not presented at trial. In *Mann*, the calculations were based on evidence that had been presented. Thus, this Court distinguished *Thacker* and allowed the calculations in *Mann*.

{16} We do not believe that this case is at all similar to *Mann*. Rather, there is no suggestion here of a juror using specialized knowledge to do calculations. Instead, the jurors simply sought mechanical assistance in doing mathematical calculations, which could have been done with pencil and paper. The jurors did not create any additional evidence for consideration, but simply organized and tested the evidence that had been presented by the State. *See Solana v. Hill*, 348 S.W.2d 481, 483–84 (Tex.Civ.App.1961) (allowing juror's use of slide rule to analyze the evidence and reconstruct the collision therefrom); *see also State v. Griffin*, 116 N.M. 689, 696, 866 P.2d 1156, 1163 (1993) (allowing jury to use magnifying glass to examine photos already in evidence). The jury's verdict was based solely on the evidence presented, not on any knowledge obtained from an extraneous source.

## CONCLUSION

{17} We hold that under the circumstances of this case, the trial court did not abuse its discretion in acquiescing to the jury's request for the use of a calculator during its deliberations. We affirm Defendant's convictions.

{18} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, and CELIA FOY CASTILLO, Judge.