[No. C037704. Third Dist. Dec. 20, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JOHN BALDINE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—A jury convicted defendant Richard John Baldine of transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and possession of marijuana for sale (Health & Saf. Code, § 11359). In a bifurcated proceeding, the jury found true an attempted robbery strike allegation (Pen. Code, §§ 664/211, 667, subds. (b)-(i), 1170.12) and two prison term allegations (Pen. Code, § 667.5, subd. (b)). Defendant was sentenced to state prison for eight years.

On appeal, defendant contends: (1) the jury was erroneously instructed with CALJIC No. 17.41.1; (2) his new trial motion based on jury misconduct was erroneously denied; and (3) the misconduct violated his Sixth Amendment confrontation rights. We shall affirm the judgment.

**FACTS**

*Prosecution case-in-chief*

On April 3, 2000, Tracy Police Officer Tomas Ribota conducted a traffic stop of Jennifer Pesout for a Vehicle Code violation. Defendant was a passenger in Pesout's car. When it was discovered that Pesout did not have a valid driver's license and had an outstanding warrant, she was arrested. Because defendant's driver's license had expired, and no other driver was available, Ribota decided to impound the car. Defendant was asked to step out of the car and an inventory search began.

Officer Ribota first searched the front seats. He found doughnuts on the floor, a knife under the seat, and a portable radio scanner between the two front seats. The scanner was not on, but Ribota turned it on to see if it worked and found that it did. The scanner received the Tracy Police channel. Ribota placed these and other items on top of the car. Defendant, who was standing about 25 feet away, asked for the doughnuts, the scanner, and a set of keys.

The search progressed to the backseat, where Officer Ribota located some plastic jugs of water and a man's black leather jacket. He searched the jacket for valuables and found a large clear plastic bag containing four small bags of suspected marijuana. The jacket also contained a small ounce scale. As Ribota was stuffing the suspected marijuana and scale back into the jacket pockets, defendant said, "Throw that jacket back here." Ribota asked, "This jacket?" and defendant replied, "Yeah, it's mine." Ribota put down the jacket, went over to defendant, and asked him "how much weed" was in the jacket. Defendant said that there was no marijuana in the jacket. Based on the quantity of marijuana and the presence of the scale and scanner, Ribota arrested defendant for possession of marijuana for sale. Laboratory analysis of the four baggies revealed that each baggie contained between 25 and 28 grams of a substance containing marijuana.

*Defense*

Defendant testified that he was a neighbor of Pesout and had never been in her car before. He was not wearing a black leather jacket. Defendant had in his possession the doughnuts, a pack of tobacco containing a $5 bill, a knife, and the scanner.

The scanner was not operational. It "[n]eeded to be charged or needed batteries." When turned on, it "would come on for a second then just completely shut off."

Defendant denied ownership of the jacket. However, he admitted telling Officer Ribota, "I guess you could say it's mine."

Defendant admitted a 1993 felony conviction for possession of a dangerous weapon.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

██ Defendant contends his new trial motion should have been granted because the jury committed misconduct during deliberations by turning on the radio scanner to see if it worked. We see no misconduct.

*Background*

Defendant's new trial motion alleged the jury committed misconduct during deliberations by conducting an unauthorized experiment. The motion was supported by defendant's trial counsel's declaration that, after trial, he interviewed a juror who disclosed that the jury decided to turn on the scanner and check the condition of the battery. According to the juror, the scanner worked well and there was nothing wrong with the battery. The jury concluded that, since defendant's testimony was that the scanner was not working, his testimony as a whole was not credible.

After hearing argument, the trial court denied the new trial motion. The court noted that in *People v. Cumpian* (1991) 1 Cal.App.4th 307 [1 Cal.Rptr.2d 861], the "jury took a duffel bag that was involved in the evidence and tried putting it over their shoulder and so forth because it was connected to the defendant's testimony. There the court pointed out the jury's re-enactment of that evidence did not constitute the receipt of evidence out of court but was merely an experiment directed at proffered evidence. To prohibit jurors from analyzing exhibits in the light of proffered testimony would obviate any reason for sending physical evidence in the jury room in the first instance. [¶] As the jurors['] experiment was based on evidence received in court, there was no juror misconduct. And I think that basically is the precedent for this particular case because it—that scanner was received in evidence. And obviously there would be no point in giving the jury evidence unless they do have an opportunity to examine and look at it closely. And so we keep telling them obviously in every trial we're going to let them see the evidence and let them handle it and look it over and see whether or not the nature of the evidence is consistent with either the People's testimony or the defense testimony and so forth. [¶] I don't think that is the type of experiment that is precluded by the court and would serve

*See footnote, *ante*, page 773.

as a basis for the granting of a new trial. So regardless, even assuming that all the statement in the affidavit is correct, I don't believe that's grounds for a new trial."

*Analysis*

This court recently set forth the controlling principles as follows: " '[N]ot every experiment constitutes jury misconduct. "[J]urors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdicts. [Citations.]" (*United States* v. *Avery* (6th Cir. 1983) 717 F.2d 1020, 1026.)' [Citation.] 'It is a fundamental rule that all evidence shall be taken in open court and that each party to a controversy shall have knowledge of, and thus be enabled to meet and answer, any evidence brought against him. It is this fundamental rule which is to govern the use of . . . exhibits by the jury. They may use the exhibit according to its nature to aid them in weighing the evidence which has been given and in reaching a conclusion upon a controverted matter. They may carry out experiments *within the lines of offered evidence*, but if their experiments shall *invade new fields* and they shall be influenced in their verdict by discoveries from such experiments which will not fall fairly within the scope and purview of the evidence, then, manifestly, the jury has been itself taking evidence without the knowledge of either party, evidence which it is not possible for the party injured to meet, answer, or explain.' [Citation.]" (*People* v. *Bogle* (1995) 41 Cal.App.4th 770, 778-779 [48 Cal.Rptr.2d 739] (*Bogle*); see *Higgins* v. *L. A. Gas & Electric Co.* (1911) 159 Cal. 651, 656-657 [115 P. 313].)

Defendant testified that the scanner was not working, because it "[n]eeded to be charged or needed batteries"; when turned on, it "would come on for a second then just completely shut off." During deliberations, the jury turned on the scanner but it did not "just completely shut off." Rather, it "worked well," and "there was nothing wrong with the battery."

By turning on the scanner and observing its operation, the jury merely "use[d]" it " 'according to its nature to aid them in weighing the evidence which has been given and in reaching a conclusion upon a controverted matter.' " (*Bogle, supra,* 41 Cal.App.4th at p. 778.) Turning the switch that energized the scanner in this case closely resembles turning the key that unlocked the safe in *Bogle*. The act was squarely " 'within the lines of offered evidence' " and did not " 'invade' " any " 'new fields.' " (*Ibid.,* italics omitted.) Nor did the jury's experiment lead to any " 'discoveries' " that did not " 'fall fairly within the scope and purview of the evidence.' " (*Ibid.*) Rather, the jurors' "discovery" that the scanner "worked" was squarely within the scope of defendant's claim that it did not work.

Defendant's complaint is not that *the experiment* invaded a new field, but that *he* had no opportunity to plow new ground *in response* to the experiment. Thus, *he* had no chance to "show[] that the scanner had some malfunction which explained why sometimes it worked only for 'a second.' " Nor did *he* have a chance to "explore the chain of custody more assiduously to see if there was a possibility that the scanner was in a different condition" than *it* had been when seized approximately seven months previously. The experiment itself had not yielded evidence on either of these points.

Defendant does not contend the scanner *in fact* had a "malfunction which explained why sometimes it worked only for 'a second.' " Nor does this silent record permit such a contention. Whether his inability to pursue the issue was prejudicial can only be determined on habeas corpus. (See *People v. Lucero* (2000) 23 Cal.4th 692, 728-729 [97 Cal.Rptr.2d 871, 3 P.3d 248].)

Chain-of-custody issues are present whenever physical evidence capable of submission to the jury is introduced at trial. Objections related to the chain of custody are waived if not timely asserted. (Evid. Code, § 353; *People v. Barajas* (1978) 81 Cal.App.3d 999, 1011 [147 Cal.Rptr. 195].) Defendant's argument would create an end run around this rule whenever deliberating jurors manipulate the physical evidence before them.

Defendant contends the jury's consideration of evidence adduced by its experiment violated his Sixth Amendment right to confront the evidence against him and, because this error was structural in nature, reversal is required. We are not persuaded.

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." (*Turner v. Louisiana* (1965) 379 U.S. 466, 472-473 [85 S.Ct. 546, 550, 13 L.Ed.2d 424, 429].) When a jury considers extraneous facts not introduced in evidence, " 'a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence.' " (*Hughes v. Borg* (9th Cir. 1990) 898 F.2d 695, 700, quoting *Gibson v. Clanon* (9th Cir. 1980) 633 F.2d 851, 854.)

However, where physical evidence admitted at trial is used by the jury "according to its nature," and any experiments are confined "within the scope and purview of the evidence" (*Bogle, supra,* 41 Cal.App.4th at p. 778), the jury does not receive "extraneous facts not introduced in evidence"

within the meaning of *Hughes v. Borg, supra,* 898 F.2d 695 at page 700. Here, the jury only considered material that was in evidence, that defendant had an opportunity to confront,[1] and that could properly be viewed. Defendant's Sixth Amendment claim has no merit.

### DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 2002.

---

[1]The confrontation clause requires that defendants be afforded an adequate opportunity to confront the evidence against them. (E.g., *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1148 [99 Cal.Rptr.2d 149, 5 P.3d 203].) Although the jury's experiment may have taken defendant by surprise, he was not without an *opportunity* to ascertain the scanner's working condition during the evidentiary portion of the trial.