The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael Lee THOMPSON, Defendant–Appellant.

No. 03CA1017.

Colorado Court of Appeals, Division III.

March 24, 2005.

Certiorari Denied Oct. 3, 2005.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by: Judge DAILEY.

Defendant, Michael Lee Thompson, appeals the judgment of conviction entered upon the trial court's determination, following a bench trial, that he was guilty of attempted second degree murder, first degree assault on a peace officer, felony menacing, carrying a concealed weapon, and two counts of crime of violence. We affirm.

## I. Facts

When a police officer attempted to restrain him, defendant drew a .380 caliber semi-automatic handgun and pointed it at the officer's head at very close range. The officer wrestled him to the ground, and the gun was retrieved from underneath defendant's body. When the gun was recovered, its slide was open, exposing part of the barrel, and a round was jammed in the breech.

The primary issue at trial was whether defendant had attempted to fire the gun while pointing it at the officer. The officer testified that, in the split second he saw the gun, he (1) observed "a slight bit of the barrel"—"less than a quarter inch"—"protruding" from the slide of the gun, and (2) heard a "click" which, in his experience, was the sound of "a hammer striking the [firing] pin of the handgun as if the trigger [had] been pulled."

The gun was admitted into evidence. Two prosecution experts demonstrated to the court how that gun, and that type of gun, functions. On a semi-automatic handgun, the slide moves backward and forward on top of the barrel to chamber and eject rounds, and to cock the hammer. Between them, the experts related how the slide on the gun works, how it could jam in an open position, how far it could open and still permit a pull on the trigger to activate the hammer mechanism (whether or not the safety is on), and how a clicking sound is produced when a pull on the trigger activates the hammer mechanism.

According to these experts, the slide does not naturally rest in an open position or expose any part of the barrel. When the gun was recovered, its slide was held open because of the round jammed in the breech. This jam could have been caused by an attempt to slowly feed the round into the chamber of the gun, or by the application of abrupt force upon the gun.

According to these experts, the slide could be open up to an eighth of an inch without interfering with the operation of the trigger-to-hammer mechanism; any greater opening of the slide would disconnect the hammer from the trigger, thereby preventing the trigger from releasing the hammer.

As recovered, the slide of the gun was jammed open "a lot more" than an eighth of an inch. One expert testified that, in this condition, the hammer mechanism could not have been activated; thus, the expert concluded that no clicking sound could have been made by the hammer.

The officer, however, testified that, when recovered, the gun was not in the same condition it had been in when defendant pointed it at him.

In closing, the prosecution argued alternative theories for finding that defendant tried to shoot the officer: (1) the officer was mistaken that the slide was open, the click sound occurred when defendant pulled the trigger without taking the safety off, and the gun jammed when the officer subsequently wrestled defendant to the ground; or (2) for some reason, the slide was initially open, as related by officer, but only up to a length that would have permitted the gun's hammer to fall and cause a click sound, as related by the officer.

After deliberating, the trial court concluded that defendant had tried to shoot the officer, based on its findings that (1) the officer saw a barrel "protruding" from the gun; (2) the officer heard a "click"; (3) "the sound made was not necessarily the sound of a hammer falling"; and (4) "the sound, whatever it was, was caused by the trigger being pulled" by defendant.

Alleging that the trial court could not have made some of these findings without having improperly experimented with the gun, defendant moved for a new trial. The trial court denied defendant's motion.

## II. Waiver of Jury Trial

■ Initially, defendant contends that his conviction should be reversed because the record does not adequately reflect that he voluntarily, knowingly, and intentionally waived his fundamental right to a jury trial. We are not persuaded.

A defendant may, with the prosecution's consent, waive the right to a jury trial, either in writing or orally in court. Crim. P. 23(a)(5); *Rice v. People*, 193 Colo. 270, 271, 565 P.2d 940, 941 (1977); *see* § 16–10–101, C.R.S.2004 (the People have the right to refuse consent to defendant's waiver of the right to a trial by jury).

■ A waiver of the right to a jury trial is effective only if it is made understandingly, voluntarily, and intentionally. It is the duty of the prosecution to establish a prima facie case of effective waiver by the defendant of the right to a jury trial. Once this prima facie case is established, however, the defendant must present evidence from which it could be reasonably inferred that the waiver was not voluntary, knowing, and intentional. *People v. Norman*, 703 P.2d 1261, 1271 (Colo. 1985); *People v. Porterfield*, 772 P.2d 638, 639 (Colo.App.1988).

In *Norman*, the defendant executed a written waiver of his right to a jury trial, which stated that defendant, "being advised of the nature of the charges against him and of his right to trial by jury, hereby waives his

right to be tried by jury, and consents that trial shall be to the Court without a jury." *People v. Norman, supra,* 703 P.2d at 1271. At the providency hearing, the court merely confirmed it was the defendant's signature on the form without inquiring as to the defendant's understanding of the right being waived. The supreme court determined that the defendant's confirmation of his signature established a prima facie case of effective waiver; because the defendant did not assert to the trial court that he misunderstood the form's explanation of his right to a jury trial, the court had no duty to reconfirm that explanation on the record.

In *Porterfield,* there was no written waiver; rather, the defendant announced in open court his intention to waive his right to a jury trial. The court asked him (1) whether it was his intention to waive the right to a jury, (2) whether he assented to the trial court being the sole finder of fact, and (3) whether he had an opportunity to discuss the waiver with his attorney, all of which he answered in the affirmative. On appeal, a division of this court rejected the defendant's argument that he should have been more fully advised, noting that the defendant did not present any evidence to rebut the prima facie case and that he presented nothing indicating he actually lacked the information necessary to make a valid waiver.

Here, defendant's counsel filed a motion, on defendant's behalf, to waive defendant's right to a jury trial. In that motion, counsel related that he had confirmed with defendant "that it [was defendant's] desire to waive the jury trial." And when the matter was raised in open court, counsel stated that he had discussed with defendant "tactical issues concerning the type of evidence in this case and its, quote, jury appeal, or not." Addressing defendant, the court informed him that he had a right to a jury trial and the right to waive his right to a jury trial. The court cautioned him about deciding which right to invoke based on anyone's predictions as to how the court might decide his case. The court then asked whether defendant "persisted in [his] desire to waive the jury," to which defendant responded, "Yes, your Honor."

During trial, and even after trial in his motion for a new trial, defendant never attempted to retract his waiver or to argue that his waiver was invalid.

In light of defense counsel's written motion, as well as the statements made by counsel, the court, and defendant on the record in open court, we conclude that the circumstances are such as to establish a prima facie case under *Norman* and *Porterfield* of an effective waiver of the right to jury trial.

In so deciding, we necessarily reject defendant's contention that a valid waiver of the right to jury trial presupposes extensive, on-the-record advisements of the kind set out in *United States v. Robertson,* 45 F.3d 1423, 1432–33 (10th Cir.1995). The court in *Robertson* nowhere intimates that such advisements are constitutionally required for an effective waiver, and the division in *People v. Porterfield, supra,* 772 P.2d at 639, held that they are not.

### III. Use of Exhibit During Deliberations

■ Defendant next contends that his constitutional rights to due process, to be present, to counsel, to notice of the nature of the accusation, to confrontation, and to public trial were violated by the manner in which the trial court examined the handgun during its deliberations. We disagree.

After reviewing the trial court's findings, defendant moved for a new trial, alleging that (1) there was no evidence presented that a "clicking" sound could have occurred, apart from the hammer falling on either the safety or the firing pin; and thus (2) the court's finding in that regard had to be the product of its experimentation with or testing of the gun during its deliberations. At a hearing held upon the motion, the court admitted that it had examined the gun and, after reviewing the trial testimony, "decided that everybody was wrong" and "that it wasn't really all that important" when and how the gun jammed; with the slide exposing an eighth of an inch of barrel, a pull on the trigger could produce a clicking sound, even though it did not activate the hammer.

On appeal, defendant asserts that, because no evidence was admitted concerning the ca-

pability of the gun to make a clicking sound apart from the hammer striking the firing pin, the court's manipulation of the gun during deliberations impermissibly produced extraneous evidence that it could not consider. This is particularly true, he asserts, because there was no testimony (expert or otherwise) indicating that the gun's slide was or could have been jammed open at only an eighth of an inch or less. We are not persuaded.

Addressing this type of issue, albeit in a case where the jury, rather than the court, acted as the fact finder, a division of this court recognized:

> A jury cannot properly consider information from an outside source, not presented during the course of the trial.
>
> However, a jury commits no impropriety in examining the physical evidence delivered to it in a manner suggested by the evidence. Indeed, unless the jury can inspect the physical evidence in some manner, it would be pointless to allow it to be taken to the jury room.
>
> Hence, the relevant inquiry is whether the experiment or investigation made by the jury can be said to be within the scope or purview of the evidence introduced at trial. If so, the actions of the jurors are not improper. It is only if their activity is the equivalent of the reception of additional evidence that they may be said to have engaged in misconduct.

*Pratt v. Rocky Mountain Natural Gas Co.*, 805 P.2d 1144, 1147 (Colo.App.1990) (citations omitted); *see People v. Agado*, 964 P.2d 565, 567 (Colo.App.1998)(allowing the jury to examine and experiment with trigger pull of gun during deliberations, to evaluate defendant's testimony).

Under the rule espoused in *Pratt*, the fact finder does not receive "additional evidence" simply because it learns from its consideration of an exhibit something new, different, or in addition to the testimony presented at trial. *See People v. Bogle*, 41 Cal.App.4th 770, 48 Cal.Rptr.2d 739, 743 (1995)(rejecting contention that "new evidence"—whether key fit lock—was discovered by jury, simply because the specific issue had never come up during trial; and noting that, while experiments with exhibits may

not "invade new fields," a "field" references an "area of inquiry," not "a specific fact" within an area of inquiry already raised by the evidence).

Indeed, only when an exhibit is not used "according to its nature" and "within the scope and purview of the evidence" is the jury held to have received "extraneous facts not introduced into evidence." *See People v. Baldine*, 94 Cal.App.4th 773, 114 Cal.Rptr.2d 570, 575 (2001); *see also* 2 John W. Strong, et al., *McCormick on Evidence* § 217, at 32 (5th ed.1999) (differentiating permissible from impermissible uses of exhibits, as follows: "[E]xperiments which are merely re-runs of in-court experiments, or which use techniques of examination not markedly different from those employed during trial are not generally held to fall within the proscribed class [of activity]. On the other hand ... experiments utilizing techniques or equipment substantially different from any employed in court tend to be held error.").

In *State v. Chamberlain*, 112 N.M. 723, 819 P.2d 673, 676 (1991), a small tape recorder activated by a police officer captured the events surrounding the fatal shooting of the officer. At trial, the defendant argued the shooting was in self-defense, calling into question when the officer pulled his gun from his holster. During deliberations, the jury reenacted the scene, paying close attention to the sound made by the officer's gun coming from its holster; the jury then compared the sound made from the reenactment to sounds on the tape recording to determine when the officer had unholstered his gun.

In reviewing the defendant's conviction, the New Mexico Supreme Court determined that, because the gun, holster, and tape were properly before the jury as exhibits, "the jury is given latitude to use its judgment" although no testimony was elicited on the exact issue of what sound was made by the unholstering of the gun. *State v. Chamberlain, supra*, 819 P.2d at 683. Because "certain testimony raised the inference that the noise on the tape may have been caused by the gun being pulled from the holster," the jury was "required" to evaluate the conflicting versions of the truth and properly used

the evidence before it to perform its duty. *State v. Chamberlain, supra,* 819 P.2d at 683.

Here, the primary issue at trial was whether defendant had attempted to discharge the gun while pointing it at the officer. The officer testified that, when defendant pointed the gun at him, he heard a "click" which, in his experience, he attributed to the hammer striking the firing pin in the gun after a pull on the trigger. The prosecution's experts were asked to opine on how far open the slide could be and still allow a pull on the trigger to activate the hammer. But they were not asked whether the trigger could also move, and produce a clicking sound, when the slide was open and the hammer mechanism could not be activated.

Given the officer's testimony, the issue was thus squarely raised whether a clicking sound could be caused by a pull on the gun's trigger when the slide was open less than a quarter of an inch on the barrel. From the record, the judge answered this, in part at least, by using his hands to simulate jammed slides at various positions along the barrel. Inasmuch as this simulation substantially corresponded with the experts' demonstrations as to how the gun and its slide worked, we perceive no error in the way in which the court conducted its examination of the gun.

Nor can we agree with defendant's assertion that no evidence was presented that the slide of the gun was or could have been jammed at any length other than that in which it was eventually found. The officer testified that (1) the gun was recovered in a different condition than when it was being pointed at him; and (2) when it was pointed at him, the slide was open less than a quarter of an inch. Thus, the officer's observations would support a conclusion that the gun had been jammed in two different positions. Further, because an opening of the slide an eighth of an inch (or less) falls within the "less than quarter of an inch" opening observed by the officer, we conclude that the court's use of the exhibit did not exceed the scope and purview of the evidence before it. *See State v. Thompson,* 164 Mont. 415, 524 P.2d 1115, 1120 (1974)(no prohibition on "a searching examination of physical evidence under conditions disclosed by the evidence in the case"); *see also State v. Ashworth,* 231 Kan. 623, 647 P.2d 1281, 1287 (1982)("[a]n experiment or demonstration is proper when conducted by the jury with the use of exhibits properly submitted to it for the purpose of testing the truth of statements made by witnesses").

Under the circumstances, we conclude that the court did not act improperly when, as fact finder, it manipulated the gun to discern whether the officer could have indeed heard a clicking sound; inasmuch as the trial court's examination of the gun during deliberations was suggested by the officer's testimony and other evidence in the case, we perceive no error in the court's action. *See State v. Rainer,* 411 N.W.2d 490, 498–99 (Minn.1987)(citing multiple cases allowing, in analogous circumstances, jury reenactments and experimentation with weapons in evidence); *State v. Chamberlain, supra.*

### IV. Sufficiency of Evidence

■ Finally, defendant contends that the evidence was insufficient to sustain his convictions for attempted second degree murder and first degree assault on a police officer. In particular, he argues the evidence was insufficient to show that he knowingly attempted to cause the death of the officer or acted with intent to cause him serious bodily injury. We do not agree.

■ When examining the sufficiency of the evidence, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Sherwood,* 5 P.3d 956, 959 (Colo. App.2000).

■ In undertaking this analysis, we recognize that: (1) an actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence, *People v. Chastain,* 733 P.2d 1206, 1211 (Colo.1987); (2) if there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element, *People v. Caldwell,* 43

P.3d 663, 672 (Colo.App.2001); and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See People v. Carlson*, 72 P.3d 411, 416 (Colo.App.2003).

Here, the officer testified that, in a sudden act, defendant spun and pointed the gun at his head at very close range. In the instant that the gun was pointed at his head, the officer heard the gun make a clicking sound, as if the trigger had been pulled. From this evidence, a reasonable fact finder had ample reason to infer that (1) defendant caused the click sound by pulling the trigger of the gun; and (2) in pulling the trigger of a loaded gun held at close range to the head of a police officer, defendant evidenced an intent to kill or seriously injure him.

Consequently, we conclude that the evidence was sufficient to support defendant's convictions for attempted murder and assault.

The judgment is affirmed.

Judge CASEBOLT and Judge PICCONE concur.