22CA1065 Peo v Martinez 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1065 Boulder County District Court No. 20CR925 Honorable Norma A. Sierra, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Richard Lawrence Martinez, Defendant-Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE GROVE Fox and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, Richard Lawrence Martinez, appeals the judgment of conviction entered after a jury found him guilty of multiple counts of murder. We affirm. I. Background ¶ 2 The jury heard evidence from which it could reasonably find the following facts. ¶ 3 Martinez’s long-term partner was at a friend’s house with two others when Seth Eberly arrived and, wielding a shotgun, confronted the group about an apparent rumor that Eberly had stolen a car. Later that night, after Martinez learned of this confrontation, Martinez’s cousin drove Martinez and Martinez’s partner around in a pickup truck. During their drive, the group stopped by the home of Martinez’s friend, where Martinez borrowed a gun. ¶ 4 During the early morning hours of the following day, Eberly drove Matthew Bond to retrieve money from Bond’s brother. As Eberly and Bond sat in the car in Bond’s brother’s driveway, Martinez and his cousin drove by and recognized their car. Martinez’s cousin parked the truck and Martinez got out, approaching the car in which Eberly and Bond sat. Eberly began to 
2 drive the car (the testimony at trial was conflicting as to whether he was trying to drive away or at Martinez or the truck). Martinez fired several gunshots at the moving car, striking and killing Bond as he huddled in the passenger seat. ¶ 5 Martinez was charged with several offenses, including two counts of first degree murder for the death of Bond (one count of murder after deliberation and one count of extreme indifference murder) and two counts of attempted first degree murder of Eberly (similarly, one count of attempted murder after deliberation and one count of attempted extreme indifference murder). ¶ 6 At trial, Martinez claimed that he shot at Eberly’s car in self-
defense and that he accidentally shot Bond because he was unaware that Bond was in the car. The jury deadlocked on the attempted first degree murder after deliberation charge (which the prosecution subsequently dismissed), but it found Martinez guilty of first degree murder (extreme indifference), the lesser included offense of second degree murder, attempted first degree murder (extreme indifference), and two crime-of-violence counts. This appeal followed. 
3 II. Jury’s Use of a Calculator During Deliberations ¶ 7 Martinez’s sole contention on appeal is that the district court violated his constitutional rights when, without consulting Martinez or defense counsel, it permitted the jury to use a calculator that the court provided during deliberations. We discern no basis for reversal. A. Standard of Review and Applicable Law ¶ 8 We review de novo whether a defendant was denied the right to be present or to be represented by counsel at a critical stage of the proceedings. People v. Guzman-Rincon, 2015 COA 166M, ¶¶ 15, 29. If we conclude that such an error occurred, we determine whether reversal is required under the constitutional harmless error standard. Key v. People, 865 P.2d 822, 827 (Colo. 1994). A constitutional error is harmless when there is no reasonable possibility that the error contributed to the defendant’s conviction. People v. Payne, 2014 COA 81, ¶ 7. ¶ 9 A criminal defendant has the right to be present and represented by counsel at all critical stages of a proceeding. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. But not every communication between the judge and jury constitutes a critical 
4 stage of the proceeding; a stage is “critical” if “there exists more than a ‘minimal risk’” that the absence of the defendant or his counsel might “impair the defendant’s right to a fair trial.” Key, 865 P.2d at 825 (quoting Gilbert v. California, 388 U.S. 263, 267 (1967)). ¶ 10 As a general matter, a defendant’s rights to be present and to be represented by counsel are triggered “when the judge gives instructions to the jury or responds to questions from the jury.” Leonardo v. People, 728 P.2d 1252, 1257 (Colo. 1986). A trial court therefore commits constitutional error when it responds to a jury’s inquiry without first making reasonable efforts to obtain the presence of defense counsel. Id. Neither the jury’s questions nor the court’s responses need be directly related to legal or factual issues in the case if the nature of the communication creates more than a minimal risk that the defendant’s right to a fair trial may be compromised. Key, 865 P.2d at 825. However, “[i]f a court properly responds to a jury’s question during deliberations, its failure to have previously secured the presence of defense counsel is harmless beyond a reasonable doubt.” People v. Isom, 140 P.3d 100, 104 (Colo. App. 2005). 
5 ¶ 11 “A jury cannot properly consider information from an outside source, not presented during the course of the trial.” People v. Wilson, 2014 COA 114, ¶ 65 (quoting People v. Thompson, 121 P.3d 273, 277 (Colo. App. 2005)); see also Moore v. Mitchell, 708 F.3d 760, 805-06 (6th Cir. 2013) (“Under the Sixth and Fourteenth Amendments, a criminal defendant has the right to a jury that considers only the evidence presented at trial and the right to confront the evidence against him.”). In scrutinizing the propriety of a jury’s experiments or investigations, “[t]he relevant inquiry is whether the experiment or investigation made by the jury can be said to be within the scope or purview of the evidence introduced at trial.” Wilson, ¶ 66 (quoting Thompson, 121 P.3d at 277). If within that scope or purview, “the actions of the jurors are not improper. It is only if their activity is the equivalent of the reception of additional evidence that they may be said to have engaged in misconduct.” Id. (quoting Thompson, 121 P.3d at 277). B. Relevant Facts ¶ 12 At trial, both the prosecution and defense discussed to varying degrees evidence of the trajectory of the bullets Martinez fired at Eberly’s car and the distance between Martinez and that car. This 
6 evidence included pictures of bullet holes and “trajectory paths being measured with rods and lasers,” as well as eyewitness testimony regarding the distance between Martinez and the car. ¶ 13 On the third day of trial, a juror gave the bailiff a note with a question for the court. The question asked whether the jury would receive analyses of bullet trajectories or “dimensions and angles for the bullet holes” in the car. The note continued: “I’m asking because the distance of the shooter from car could be a deciding factor. With the bullet hole information, it is a simple calculation to estimate the distance between the car and the shooter.” In response to this juror’s question, the district court informed the jury only that it had not yet heard all of the evidence. ¶ 14 During deliberations, the jury requested and was provided a calculator by the district court. The court did not consult the parties before approving this request, instead informing them after the fact and noting that “[i]t is unknown to the Court what use they made of that instrument.” Defense counsel moved for a mistrial on the bases that the court permitted the jury to use a calculator without consulting the defense and the calculator injected “extraneous outside information” into the jury’s deliberations. 
7 Alternatively, defense counsel requested that the court take corrective action to cure the prejudice allegedly posed by the calculator. ¶ 15 The district court denied the motion, writing in its order: Jurors are permitted supplies during deliberations, such as paper, writing instruments, and a whiteboard. These can be used for mathematical calculations. When jurors inquired about being provided a calculator, the Court regarded such request much akin as a request for a marker or another office supply to aid their organization of the evidence and in their decision-making. A battery-operated calculat[or] was provided. ¶ 16 The court also directed the parties to Kendrick v. Pippin, 252 P.3d 1052 (Colo. 2011), abrogated on other grounds by Bedor v. Johnson, 2013 CO 4, explaining that the supreme court held in that case that “an engineer juror appl[ying] her professional experience to the evidence in the record to calculate the defendant’s speed, distance and reaction in a personal injury case . . . did not constitute juror misconduct and did not present extraneous prejudicial information.” 
8 C. Analysis ¶ 17 Martinez contends that the jury’s request for a calculator was a critical stage of the proceedings, and that his convictions must be reversed because the court failed to secure both his and his counsel’s presence before granting the request. According to Martinez, it was also reversible error for the district court to permit the jury to use a calculator and to take no corrective action following his motion for a mistrial. ¶ 18 We need not decide whether the jury’s request for a calculator was a critical stage of the proceedings because, even if it was, any error was harmless beyond a reasonable doubt. In short, the jury’s use of a calculator to examine the evidence was “within the scope or purview of the evidence introduced at trial,” Wilson, ¶ 66 (quoting Thompson, 121 P.3d at 277), and thus was not improper. ¶ 19 The jury’s use of a “battery-operated calculat[or]” merely facilitated the jury’s examination of the evidence rather than permitted the creation of any evidence outside the record. See State v. Lihosit, 38 P.3d 194, 195-98 (N.M. Ct. App. 2002) (trial court did not abuse its discretion by granting jury’s request, during deliberations, for a calculator in a complicated embezzlement case 
9 involving multiple pieces of evidence; the jury “did not create any additional evidence for consideration, but simply organized and tested the evidence that had been presented by the State”); see also Poppe v. Siefker, 735 N.W.2d 784, 791 (Neb. 2007) (personal financial slide calculator was neither evidence nor a creator of evidence; it merely “perform[ed] a mathematical calculation that could have been done with a pencil and paper, except that the slide calculator potentially made the calculation easier and the result more accurate”); Solana v. Hill, 348 S.W.2d 481, 483-84 (Tex. Civ. App. 1961) (concluding that juror misconduct was not established in automobile accident case by juror’s use of slide rule to analyze evidence of speed, distances, and time intervals to test the credibility of witness testimony). ¶ 20 In arguing that the jury should not have been permitted to use a calculator, Martinez emphasizes that “[i]n modern times, calculators (which are a specialized device) typically contain functions capable of conducting not only basic arithmetic but also complex mathematics and equations.” This argument fails for two reasons: (1) nothing in the record suggests that the calculator the court provided was in fact capable of “complex mathematics and 
10 equations”; and (2) even if the calculator were more than a basic arithmetical aid, Martinez fails to explain why the ability to perform more advanced calculations would make its use by the jury improper. ¶ 21 We are likewise unpersuaded by Martinez’s argument that, given the jurors’ educational backgrounds, it is likely that they used the calculator in a manner that exceeded the capability of a pen and paper or other standard office supply. Martinez cites no authority, and we are aware of none, supporting the notion that the permissibility of providing jurors with tools to assist with their deliberations depends upon their levels of education. ¶ 22 Martinez’s attempt to distinguish Kendrick, 252 P.3d at 1065 — in which the supreme court held that jurors may “rely on their professional and educational expertise to inform their deliberations so long as they do not bring in legal content or specific factual information learned from outside the record,” id. — from the events here amounts only to a list of distinctions without differences. We agree with the district court’s analysis of Kendrick’s applicability. And Martinez’s effort to analogize the jury’s use of a calculator during deliberations to other cases in which jurors 
11 brought specific extraneous information into deliberations likewise does not pass muster. See, e.g., People v. Harlan, 109 P.3d 616, 634 (Colo. 2005) (jury’s use of Bible during deliberations meant death penalty was influenced by extraneous information); Destination Travel, Inc. v. McElhanon, 799 P.2d 454, 455-57 (Colo. App. 1990) (figures used to determine employees’ salaries “did not come from general knowledge or evidence produced at trial, but rather resulted from specific factual information from outside the record” — estimates “based on prior business knowledge and experience”); People v. Clark, 2015 COA 44, ¶ 213 (jurors discussed case extensively outside of deliberations and visited scene of the crime to see for themselves the visibility of passing cars). ¶ 23 Because we conclude that the jury’s use of a calculator during deliberations was within the scope or purview of the evidence at trial, we necessarily reject Martinez’s argument that the district court reversibly erred when it took no action to remedy the jury’s use of the calculator. Moreover, any error in not consulting the defense before responding to the jury’s request for the calculator was harmless beyond a reasonable doubt. 
12 III. Disposition ¶ 24 We affirm the judgment of conviction. JUDGE FOX and JUDGE SULLIVAN concur.