Opinion by JUDGE FREYRE
¶ 1 T.C.C., a juvenile, appeals from a judgment adjudicating him delinquent of an act that would constitute robbery and third degree assault if committed by an adult. He asserts that the prosecutor improperly vouched for a witness's credibility during closing argument and that the resulting prejudice requires reversal for plain error. He also asserts that the court erred in ruling that the probation department could seek waiver of mandatory fees based on his good behavior. He argues that the relevant statutes permit the court to waive mandatory fees only on a finding of indigence, an issue not previously considered by this court. We disagree with his first contention and affirm his adjudications. However, we agree with his second contention and remand for the trial court to rule on his outstanding motion for waiver of costs and fees based on indigence.
I. Background
¶ 2 This case arose from an altercation between T.C.C. and Ronald Ipson after T.C.C. removed a package from the front step of Ipson's neighbor's house. Ipson confronted T.C.C. and told him to return the package. T.C.C. then slapped, punched, and swore at Ipson. Shen Smith witnessed the scuffle while driving by and stopped to ask what was happening. Ipson told her to call the police, and T.C.C. ran off with the package. Smith called the police and drove around the block to an alley where she saw T.C.C. without the package. She asked T.C.C. if he was okay and what was going on. T.C.C. said a friend asked him to pick up the package. While they were talking, Ipson arrived and was videotaping the two with his phone. Ipson asked T.C.C. where the package was and T.C.C. turned around, said "Oh shit," attempted to pull his hood over his face, and slapped Ipson. T.C.C. slapped the phone out of Ipson's hand, picked it up, and ran away. T.C.C. could be heard yelling "bitch ass nigger, I'll throw your shit," as he ran off.
¶ 3 Police arrived shortly thereafter and located T.C.C. nearby. An officer saw T.C.C. throw two objects over a fence into a yard before he was arrested. Police later recovered Ipson's cell phone from where T.C.C. had thrown it. Police also found Ipson's cell phone case in T.C.C.'s backpack. The owners of the package said they did not know T.C.C. and had never asked him to pick it up.
II. Prosecutorial Misconduct in Closing
¶ 4 T.C.C. contends that the prosecutor improperly vouched for Ipson's credibility *807 and truthfulness when he argued, "Certainly Mr. Ipson has no reason to make up that he got struck numerous times from [T.C.C.]." We discern no error and, therefore, reject T.C.C.'s contention.
A. Standard of Review and Applicable Law
¶ 5 We review claims of prosecutorial misconduct for an abuse of discretion. Domingo-Gomez v. People , 125 P.3d 1043, 1049 (Colo. 2005). The evaluation of a prosecutorial misconduct claim involves two steps. Wend v. People , 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct was improper based on the totality of the circumstances. Id. ; see also People v. Strock , 252 P.3d 1148, 1153 (Colo. App. 2010) ("Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury."). Second, we consider whether any improper action warrants reversal under the applicable standard of review. Wend , 235 P.3d at 1096.
¶ 6 The parties agree that we should review T.C.C.'s unpreserved claim for plain error. Plain error is error that is both obvious and severely prejudicial. Hagos v. People , 2012 CO 63, ¶ 14, 288 P.3d 116. "Prosecutorial misconduct in closing argument rarely constitutes plain error." People v. Tillery , 231 P.3d 36, 44 (Colo. App. 2009), aff'd sub nom. People v. Simon , 266 P.3d 1099 (Colo. 2011). Indeed, "[a]n appellate court will not grant a new trial on the basis of prosecutorial misconduct unless the prejudice created thereby was so great as to result in a miscarriage of justice." People v. Harris , 914 P.2d 425, 432 (Colo. App. 1995).
¶ 7 "Closing arguments are rarely scripted with precision." Tillery , 231 P.3d at 44. We therefore give prosecutors the benefit of the doubt when remarks are "ambiguous" or "inartful." People v. McBride , 228 P.3d 216, 221 (Colo. App. 2009) (citations omitted). We also consider a defendant's "[l]ack of an objection [a]s a factor ... in examining the impact of a prosecutor's closing argument. ... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." Tillery , 231 P.3d at 44 (quoting People v. Rodriguez , 794 P.2d 965, 972 (Colo. 1990) ). While a prosecutor may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom, a prosecutor may not assert a personal opinion about the credibility of a witness. People v. Gladney , 250 P.3d 762, 769 (Colo. App. 2010).
B. Application
¶ 8 T.C.C. contends that the prosecutor's argument-that Ipson had "no reason to make up" the assault-was improper because the prosecutor was "vouching" for Ipson's credibility. Specifically, he argues that there was no evidentiary basis for this argument and claims the error requires reversal because the "assault conviction hinged on Mr. Ipson's credibility."
¶ 9 We perceive nothing improper about the prosecutor's argument and conclude that it was a reasonable inference from the record. See People v. Wilson , 2014 COA 114, ¶ 55, 356 P.3d 956 ("The context in which the prosecutor used the potentially problematic words 'truth' and 'truthful'-i.e., (1) that there was no evidence that [witness] had a motive to lie ...-reveals that the prosecutor was drawing reasonable inferences from the evidence....").
¶ 10 Smith testified that Ipson and T.C.C. were "scuffling." Although she never saw T.C.C. slap Ipson, the altercation took place behind her and was corroborated by the videotape evidence. The video recording showed the phone violently fall to the ground in connection with a noise sounding like a hit or slap. T.C.C. could be heard yelling and running away. Both Smith and Ipson identified T.C.C., and a clear image of T.C.C.'s face could be seen on the video right before the phone was knocked from Ipson's hand. Thus, in the context of the trial evidence, we conclude that the prosecutor's use of the words "make up," while perhaps "inartful" because it was not directly tied to the evidence that supported it, did not constitute improper vouching and was a reasonable inference from the evidence.
*808 III. Fee Waiver
¶ 11 As a preliminary matter, we note that challenges to conditions of probation are generally not subject to appellate review. § 18-1.3-104(1)(a), C.R.S. 2017. However, we may review a challenge to the terms of probation on the basis that the court exceeded its statutory authority in imposing the sentence. Id. ; People v. Rossman , 140 P.3d 172, 174 (Colo. App. 2006).
¶ 12 At sentencing, T.C.C. asked the court to waive all mandatory fees based on his indigence.[1] The trial court responded that probation could "ask to waive those [fees] if you do well. So, that's an added incentive for you, [T.C.C.], to do well. If you do well then you won't have to pay all of those fees." The court never ruled on T.C.C.'s motion based on indigence.
¶ 13 T.C.C. contends that the court erred in delegating the waiver decision to probation and in permitting a waiver of fees based on "good behavior." He further contends that the court "impliedly waived" the mandatory fees based on indigence and asks us to amend his mittimus accordingly. We agree with his first contention, reject his second contention, and remand to the court to rule on his outstanding motion for waiver based on indigence.
A. Standard of Review and Applicable Law
¶ 14 We review a trial court's interpretation of a statute de novo. People v. Garcia , 113 P.3d 775, 780 (Colo. 2005). When interpreting a statute, "a court's essential task is to determine and give effect to the intent of the legislature." People v. Goodale , 78 P.3d 1103, 1107 (Colo. 2003). To accomplish this task, we must first examine the plain language of the statute itself. Jefferson Cty. Bd. of Equalization v. Gerganoff , 241 P.3d 932, 935 (Colo. 2010). If the language is clear and unambiguous, we must interpret it as written. Id.
¶ 15 The parties agree that T.C.C. did not object on the same grounds he argues on appeal and we must review his argument for plain error. Hagos , ¶ 14. To be plain, an error must be obvious and substantial. An error is obvious if it contravenes either a clear statutory command, a well-settled legal principle, or Colorado case law. People v. Pollard , 2013 COA 31M, ¶ 40, 307 P.3d 1124.
B. Application
¶ 16 T.C.C. contends that the statutory framework governing probation and the waiver of fees and surcharges requires the court, not probation, to decide waiver, and that a determination of such waiver may be based only on indigence and not good behavior. The People contend that the crime victim and witness compensation statutes, section 24-4.1-119, C.R.S. 2017 and section 24-4.2-104, C.R.S. 2017, do not apply in juvenile cases, and that even if they do apply, they permit a court to condition a fee waiver on grounds other than indigence because of the absence of prohibitory language. We agree with T.C.C. that the plain language of the statutes permits only the court to waive fees and surcharges and that any such determination of waiver may only be premised on indigence. Therefore, we reverse the court's ruling to the contrary.
¶ 17 Section 19-2-925, C.R.S. 2017, governs juvenile probation. It provides that "[t]he terms and conditions of probation shall be specified by rules or orders of the court ." § 19-2-925(1)(a) (emphasis added). It further requires that the juvenile "[p]ay the victim compensation fee as ordered by the court ," § 19-2-925(2)(j) (emphasis added), and that the juvenile "[p]ay the surcharge levied pursuant to section 24-4.2-104(1)(a)(I)," § 19-2-925(2)(k).
¶ 18 The plain statutory language therefore authorizes the court, not probation, to order the payment of fees and surcharges, but is silent concerning waiver. Because the statute specifically incorporates section 24-4.2-104, we look to it and to section 24-4.1-119, which also concerns costs and fees, to *809 determine their applicability to juvenile cases and to answer the waiver question.
¶ 19 As relevant here, section 24-4.1-119 applies to juvenile cases by stating that "[a] cost ... is hereby levied on every action upon the filing of a petition alleging a child is delinquent which results in a finding of guilty...." § 24-4.1-119(d). Similarly, section 24-4.2-104 applies to juvenile cases by stating that "[a] surcharge ... is hereby levied ... upon each petition alleging that a child is delinquent that results in a finding of guilty." § 24-4.2-104(1)(a)(I). Therefore, we disagree with the People's contention that these statutes do not apply to juvenile cases.
¶ 20 Concerning waiver, section 24-4.1-119(1.5) provides that "[a] cost or surcharge levied pursuant to this section may not be suspended or waived by the court unless the court determines that the defendant against whom the cost or surcharge is levied is indigent." § 24-4.1-119(1.5). Similarly, section 24-4.2-104(1)(c) provides that "[t]he surcharge levied by this section may not be suspended or waived by the court unless the court determines that the defendant is indigent." § 24-4.2-104(1)(c).
¶ 21 We first conclude that the plain statutory language of both provisions permits only the court to make the waiver decision. This interpretation is consistent with the juvenile probation statute that requires juveniles to pay fees "as ordered by the court ." § 19-2-925(2)(j) (emphasis added); see also § 2-4-201(1)(b), C.R.S. 2017 ("In enacting a statute, it is presumed that: ... The entire statute is intended to be effective...."); Martin v. People , 27 P.3d 846, 851 (Colo. 2001) ("We 'must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts.' " (quoting Charnes v. Boom , 766 P.2d 665, 667 (Colo. 1988) )).
¶ 22 We next conclude that the plain statutory language permits a court to waive fees and surcharges based solely on a finding of indigence and not based on a juvenile's good behavior. First, the juvenile probation statute requires all juveniles, at a minimum, to comply with all laws, to remain substance free, to report to the probation department, to answer all reasonable inquiries, to keep the probation department notified of their whereabouts, to pay restitution and fees, and to comply with all other reasonable terms and conditions-in essence, to exhibit good behavior. See § 19-2-925(2)(a)-(l).
¶ 23 Second, we are not persuaded by the People's argument that the absence of language prohibiting waiver based on good behavior thereby permits such a waiver. If the General Assembly had intended to empower courts to waive fees and surcharges for reasons other than indigence, it would have said so. We may not read language into a statute that does not exist. See Neves v. Potter , 769 P.2d 1047, 1053 (Colo. 1989) ("The meaning of [a] statute should be determined from the statute's plain language, and we will not usurp the legislature's power by deciding what should have been said." (citing Charnes v. Lobato , 743 P.2d 27 (Colo. 1987) )).
¶ 24 Finally, we cannot ignore the General Assembly's decision to use the specific language-"may not be suspended or waived ... unless"-which, in our view, clearly signals that indigence is the only basis for waiving fees and surcharges. The "may not" language imposes a clear restriction upon the court against waiver, while the "unless" language provides the exception to that restriction. Thus, the General Assembly provided a single circumstance where mandatory fees and surcharges are waivable-a finding of indigence. See People v. Lowe , 60 P.3d 753, 756 (Colo. App. 2002) ("[F]ees and costs are, by statute, payable at the time they are assessed, absent a determination of indigency.").
¶ 25 We further conclude that the error was plain because it contravened the clear and unambiguous language of sections 24-4.1-119 and 24-4.2-104. By conditioning waiver on good behavior, the trial court did not "give effect to the purpose and intent of the General Assembly in enacting [the statutes]," M.T. v. People , 2012 CO 11, ¶ 8, 269 P.3d 1219, and thereby contravened a "clear statutory command," Pollard , ¶ 40 ; see also M.T. , ¶ 22 (concluding that the misinterpretation of a statute required remand to vacate);
*810 People v. Mosley , 167 P.3d 157, 161-62 (Colo. App. 2007) (noting that statutory violations can be "obvious" errors).
¶ 26 We are not persuaded by T.C.C.'s contention that the court impliedly waived fees, costs, and surcharges. At the hearing, T.C.C. orally requested waiver based on indigence, and the court responded that waiver was a future possibility based on good behavior. However, the court never ruled on T.C.C.'s request for waiver based on indigence. Therefore, the record does not support T.C.C.'s argument that the court impliedly waived any fees, costs, or surcharges. Because the court never ruled on T.C.C.'s request, we remand the case for a ruling on T.C.C.'s outstanding motion.
IV. Conclusion
¶ 27 We affirm the judgment and sentence and remand the case for the trial court to rule on T.C.C.'s motion for waiver of fees and costs based on indigence.
JUDGE J. JONES and JUDGE FOX concur.

These fees included the victim compensation fee, the victim's assistance surcharge, a restorative justice fee, and the public defender fee.